IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

WILLIAM RODRÍGUEZ-BURGOS,

Plaintiff,

v.

ARCOS DORADOS PUERTO RICO,
LLC AND PLH INVESTMENT,
INC.

Defendants.

CIV. NO.: 19-2089 (SCC)

## OMNIBUS OPINION AND ORDER

Pending before the Court are cross-motions for summary judgment filed by Defendants Arcos Dorados Puerto Rico, LLC and PLH Investment, Inc. ("Defendants"), *see* Docket No. 127 and Plaintiff William Rodríguez-Burgos ("Plaintiff"), *see* Docket No. 128, respectively. For the reasons set forth below, Defendants' motion for summary judgment at Docket No. 127 is **GRANTED IN PART and DENIED IN PART**. Meanwhile, Plaintiff's motion for summary judgment at Docket No. 128 is **DENIED**.

### I.   BACKGROUND

Plaintiff filed suit against Defendants for various violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182 *et seq.* Docket No. 41. He argues

that there are certain architectural barriers and elements in the parking lot area and restroom in the McDonald's Restaurant located at Marginal Los Ángeles, Carolina, Puerto Rico 00979, GPS Coordinates: (18.431372, - 66.002314) (the "Restaurant"), that are not in compliance with Title III of the ADA. *Id.* He seeks declaratory and injunctive relief, in addition to attorney's fees. *Id.* Before moving forward, a brief procedural recap is necessary.

This case is rather unique because even though pending before the Court are cross-motions for summary judgment, no formal discovery has been conducted. While it is true that an initial scheduling order was entered at Docket No. 37, shortly thereafter, Plaintiff filed an Amended Complaint, *see* Docket No. 41, which prompted the Court to enter the following order: "[o]nce all the defendants appear and answer the Amended Complaint a new discovery timetable will be ordered." Docket No. 46. Albeit that order, Defendants moved for summary judgment and Plaintiff moved for partial summary judgment. *See* Docket Nos. 64 and 77. Defendants argued, *inter alia*, that summary judgment was proper because after certain alterations which were prompted by the

allegations advanced in the Complaint and subsequent Amended Complaint were made to the Restaurant, the Restaurant was ADA compliant. Docket No. 64. They relied on an expert report prepared by Engineer Emilio J. Solís (the "Solís Report") to support that assertion. Docket No. 64-2. The Solís Report is dated October 28, 2020. Docket No. 64-2; *see also* Docket No. 127-2.

Upon reviewing the motions for summary judgment, the Court issued an order noting that the motions appeared to be premature in view of the Defendants' exclusive reliance on the Solís Report, an unsworn expert report that was not made under penalty of perjury and the fact that no formal discovery had been conducted up to that point. Docket No. 92. With the goal of getting this case back on track, the Court announced that, "given the history of mudslinging in which the parties ha[d] engaged throughout this litigation," it would appoint an expert pursuant to Federal Rule of Evidence 706(a). *Id.*

After asking the parties to submit three proposed experts, only Defendants returned to the table, but with just two options, instead of the requested three. Docket Nos. 92-94. Nevertheless, Defendants' submission went unopposed, and

the Court determined that Ms. Istra Hernández-Cabán ("Ms. Hernández-Cabán") would serve as the Court appointed expert. Docket No. 95. Ms. Hernández-Cabán was therefore ordered to conduct a site visit and render a report regarding her visit to the Restaurant that would address the allegations advanced in the Amended Complaint. *Id.*

In her report, Ms. Hernández-Cabán identified a myriad of elements and architectural barriers in the Restaurant that were not in compliance with Title III of the ADA (the "Hernández-Cabán Report"). Docket No. 99. The Court informed the parties that they should state whether they intended to submit their positions regarding the Hernández-Cabán Report in writing or if they preferred for the Court to hold a hearing, at which time they would be able to question her. Docket No. 98. In view of the parties' lack of response, the Court issued an order adopting the Hernández-Cabán Report in its entirety.[1] Docket No. 100. Moreover, the Court ordered Defendants to perform the following corrections:

- Demolish and relocate advertising columns on sidewalks to provide a clear 36"

---

[1] The Court highlights that Defendants did not voice their intent to amend the Solís Report in light of the Hernández-Cabán Report.

width, as recommended on pages 5-6 of the
Report ("**Correction 1**");

•      Adjust closing force of doors closers, as
recommended on pages 9 and 16 of the Report
("**Correction 2**");

•      Relocate Temperature Reader top
surface to 48" maximum height and remove
chairs at the adjacent fixed table to provide
forward approach, as recommended on page 10
of the Report ("**Correction 3**");

•      Redesign and reconfigure the bathroom
to meet all ADA Chapter 6 plumbing elements
and facilities standards, as recommended on
page 14 of the Report ("**Correction 4**");

•      The parking space must be redesigned
and reconfigured in accordance with ADA 2010
Chapter 5, as recommended in pages 12-13 of
the Report ("**Correction 5**");

•      Install a certified ADA accessible Play
System, as recommended on page 16 of the
Report ("**Correction 6**"); and

•      Eliminate the fixed bench in the Play
Area to increase maneuvering clearance to 18"
minimum, as recommended on page 16 of the
Report ("**Correction 7**").

*Id.* at pgs. 2-3.

Shortly after the Hernández-Cabán Report was issued,

Plaintiff once again moved for summary judgment. Docket

No. 101. The Court, however, stated that it would hold the

same in abeyance until Defendants filed their compliance report with the Court's directive at Docket No. 100 to undertake the corrections outlined in the Hernández-Cabán Report. Docket No. 108. Defendants filed their compliance report almost two weeks past the deadline imposed by the Court. Docket No. 111. Therein, they relied on Jorge Gerardo Hurtado-Arroyo's unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746 (the "Hurtado-Arroyo Statement"). Docket No. 111-1. Mr. Hurtado-Arroyo identified himself as the General Equipment and Maintenance Manager for Arcos Puerto Rico, LLC. *Id.* In short, Mr. Hurtado-Arroyo represented that the corrections recommended in the Hernández-Cabán Report had been taken care of by Defendants. *Id.* The only corrections that were not implemented were Corrections 6-7 (those concerning the play area) given that the Restaurant would not reopen the play area while the COVID-19 restrictions remained in effect. *Id.* at ¶ 7.

After the Court reviewed Defendants' motion in compliance, Ms. Hernández-Cabán was ordered to once again visit the Restaurant to verify if the corrections had in

fact been made. Docket No. 117-118. In the meantime, the Defendants' motion in compliance was held under advisement. Docket No. 112. In her compliance report (the "Hernández-Cabán Compliance Report"), Ms. Hernández-Cabán indicated that Corrections 1, 6 and 7 were not followed. Docket No. 119 at pgs. 5-6 and 14-15. Further, while certain alterations were made in response to Corrections 2, 4 and 5, the areas were still not in compliance. *Id.* at pgs. 8-13. She did not express an opinion as to Correction 3 since the temperature reader was replaced with a hand sanitizer dispenser which was placed at the correct maximum height of 48 inches. *Id.* at pg. 7. After reviewing the Hernández-Cabán Compliance Report, the Court denied Plaintiff's motion for summary judgment at Docket No. 101 and Defendants' Motion in Compliance at Docket No. 111. Docket No. 120.

It is in this context, that Plaintiff and Defendants have once again moved for summary judgment. Defendants' motion for summary judgment is premised on their understanding that Plaintiff's suit is time-barred and that in any event, his claims are moot because it undertook successful remedial efforts to

comply with the ADA. Docket No. 127. They also add that Plaintiff has not shown that the necessary corrections are "readily achievable." *Id.* In support of their motion, Defendants once again (as they did in their initial motion for summary judgment at Docket No. 64 and subsequent motion in compliance at Docket No. 111) rely on the Solís Report and the Hurtado-Arroyo Statement.

For his part, Plaintiff moves for summary judgment on the ground that even though he would like to return to the Restaurant, he is precluded from doing so, because as the Hernández-Cabán Report and the Hernández-Cabán Compliance Report confirm, the Restaurant is not in compliance with Title III of the ADA and the barriers that prohibit his equal access to the Restaurant, remain in place. Docket No. 128. His logic follows that, if he were to return, it is likely he would be subject to future injury. *Id.* Plaintiff relies on Defendants' Answer to Requests for Admissions and his own unsworn statement under penalty of perjury, in support of his motion for summary judgment. Docket Nos. 128-2 and 128-3.

## II.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

### a.  Summary Judgment Standard

Summary judgment is proper under Rule 56, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a).  A dispute of fact is "genuine" if "the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *See Dunn v. Trs. Of Bos. Univ.*, 761 F.3d 63, 68 (1st Cir. 2014) (internal quotations and citations omitted). And "facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'" *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23 (1st Cir. 2017) (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)).

The movant bears the initial burden of establishing "the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But after the movant makes an initial showing that no genuine issues of material fact are present, to overcome a motion for summary judgment, the non-movant must demonstrate "through submissions of evidentiary quality, that a trialworthy issue persists." *See*

*Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006). It is worth noting, however, that when the non-movant bears the ultimate burden of proof at trial, the non-movant cannot "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). Further, while the Court draws all reasonable inferences from the record in the light most favorable to the non-movant, in doing so, it casts aside and ignores all "conclusory allegations, improbable inferences, and unsupported speculation." *See García-García v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (internal quotations and citations omitted).

When faced with cross-motions for summary judgment—as is the case here—the Court need not apply a different standard of review than the one espoused above. *See Adria Int'l Grp., Inc., v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). The Court need only "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Id.* And while each motion for summary judgment will be decided on its own merits, because both the

Defendants and the Plaintiff's respective motions for summary judgment were filed simultaneously, the Court will consider both motions at the same time. *See P.R. American Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 133 (1st Cir. 2010).

### b. Undisputed Facts ("UF")

To make its factual findings, the Court considered the following: (1) Defendants' Statement of Uncontested Material Facts ("DSMF") at Docket No. 127-1; (2) Plaintiff's Response in Opposition to Defendants' Statement of Uncontested Facts at Docket No. 141-1 ("PLAINTIFF'S RESPONSE SMF"); (3) Plaintiff's Statement of Uncontested Material Facts at Docket No. 128-1 ("PSMF"); and (4) Defendants' Response to Plaintiff's PSMF at Docket No. 130 ("DEFENDANTS' RESPONSE SMF"), in tandem with the documents cited and attached thereto, in accordance with Local Rule 56(e). After examining the same and having disregarded legal arguments and conclusory[2] statements, the Court finds that the following

---

[2] *See Cruz-Acevedo v. Toledo-Dávila,* 660 F. Supp. 2d 205, 209 (D.P.R. 2009) (clarifying that "[a]s a general principle, parties may not include legal arguments or conclusions in their statement of facts.") (internal citations omitted).

facts are undisputed:

1. Plaintiff is a disabled man who suffers from multiple sclerosis. PSMF ¶ 1.

2. This condition hinders his ability to engage in daily life activities such as walking, standing and bending. PSMF ¶ 1 and Docket No. 128-3 at ¶ 3.

3. Plaintiff holds a permanent disabled person's license permit. PSMF ¶ 1.

4. While Plaintiff regularly visits McDonald's restaurants, the one that he visits the most is the Restaurant at issue. PSMF ¶ 3.[3]

---

[3] Defendants deny PSMF ¶ 3 on the ground that Plaintiff lacks standing because his attorney, Mr. José Vélez-Colón, and not Plaintiff himself, is the individual that visits the establishments that are then sued for ADA violations. DEFENDANTS' RESPONSE SMF ¶ 3. To support that contention, Defendants cite to a panoply of cases filed by Attorney Vélez-Colón in this District and excerpts of investigations conducted by a private investigator to show that in those other cases, Attorney Vélez-Colón has reportedly harassed small stores with his presence and has alleged ADA violations in order to obtain monetary settlements that will exclusively benefit him, not his clients. *Id.* Defendants also point to numerous reprimands issued by Judges in this District and directed at Attorney Vélez-Colón for the unbecoming way he litigates ADA cases. While this information is certainly alarming, it does not directly controvert Plaintiff's PSMF ¶ 3 given that none of the evidence offered by Defendants concerns the Plaintiff in this case or the Restaurant at issue. Accordingly, PSMF ¶ 3 is deemed admitted.

5.  Plaintiff is aware that the Restaurant is owned and operated by Defendants. PSMF ¶ 7.

6.  The Restaurant has been operating since 1993 and certain areas underwent renovations in or around 2001. DSMF ¶ 4.

7.  While Plaintiff visited the Restaurant on November 11, 2018 and January 30, 2019, on November 21, 2019 he was deterred from visiting the same due to his knowledge of certain illegal barriers that "pose a discrimination risk" to him and preclude him from adequately entering the establishment. PSMF ¶ 2.[4]

8.  Plaintiff also visited the Restaurant on January 30, 2020. PSMF ¶ 4.[5]

9.  During his January 30, 2020 visit, Plaintiff noticed that the accessible parking space on the west side of the Restaurant did not (a) have a 60-inch wide access aisle; (b) is not

---

[4] Defendants denied PSMF ¶ 2 on the same ground they used to deny PSMF ¶ 3. Here, the Court maintains its stance as stated at *supra* note 3 and therefore admits PSMF ¶ 2.

[5] Defendants denied PSMF ¶ 4 on the same ground they used to deny PSMF ¶¶ 2-3. Here, the Court maintains its stance as stated at *supra* note 3 and therefore admits PSMF ¶ 4.

RODRÍGUEZ-BURGOS v. ARCOS                                    Page 14
DORADOS, LLC, ET AL.

located next to an accessible route; and (c) is not by the nearest entrance. PSMF ¶ 4.[6]

10. During that same January 30, 2020 visit, Plaintiff also noticed that the parking stall located on the east side of the Restaurant does not have an accessible aisle. PSMF ¶ 4.[7]

11. The configuration of the parking lot hinders Plaintiff's ability to adequately use the same and makes it difficult for him to get in and out of his van. PSMF ¶ 5.[8]

12. Regarding the restroom in the Restaurant, Plaintiff is also aware of the following: (a) the restroom does not have "grab bars" that are at a horizontal position and that are 33 inches minimum and 36 inches maximum above the finish floor; (b) the restroom does not provide a clearance around the water closet that is 60 inches minimum measured perpendicular from the side wall due to an obstruction, in this case, the obstruction is the lavatory;

---

[6] *Id.*

[7] *Id.*

[8] Defendants denied PSMF ¶ 5 on the same ground they used to deny PSMF ¶¶ 2-4. Here, the Court maintains its stance as sated at *supra* note 3 and therefore admits PSMF ¶ 5.

and (c) the restroom does not have s soap dispenser that considering a forward reach, is 48 inches maximum. PSMF ¶ 6.[9]

13. Plaintiff wishes to return to the Restaurant because he enjoys the food there and would like to avail himself of the facilities there but is precluded from doing so if the barriers in the Restaurant remain in place. PSMF ¶ 2 and ¶ 11.

### III. OVERARCHING MATTERS

#### a. Defendants' Contention that this Suit is Time-Barred

Defendants argue that Plaintiff's suit is time-barred because of Puerto Rico's one year statute of limitations for personal injury actions. Docket No. 127 at pgs. 16-18. Defendants also maintain that, even if Plaintiff attempted to argue that the "continuing violation doctrine" applies to his case, that argument would fall flat. *Id.* at pg. 17 n. 23.[10]

---

[9] Defendants denied PSMF ¶ 6 on the same ground they used to deny PSMF ¶¶ 2-5. Here, the Court maintains its stance as stated at *supra* note 3 and therefore admits PSMF ¶ 6.

[10] The Court could not help but notice that Defendants' footnote 23 at Docket No. 127 tracks a portion of the Opinion and Order issued in *Suárez-Torres v. Funeraria Asencio*, Civ. No. 16-2296, 2018 WL 1568536, at * 4

Plaintiff, however, did not address the time-barred argument when he opposed Defendants' motion for summary judgment. Even without Plaintiff's input regarding this matter, the Court considers Defendants' argument.

The ADA does not provide a statute of limitations. Therefore, the Court "borrow[s] the most analogous statute of limitations from Puerto Rico law, provided that it does not conflict with federal law or policy." *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 118-119 (1st Cir. 2003). Defendants argue that Puerto Rico's one year statute of limitations under its general tort statute applies. Docket No. 127 at pg. 17 n. 21. And the Court agrees. The Court also agrees that the "continuing violation doctrine," as defined and discussed at Docket No. 127 pg. 17 n. 23, is inapplicable here. But the Court does not agree that Plaintiff's suit is time-barred.

Defendants' argument is predicated on their clear-cut application of the one-year statute of limitations. To that end,

---

(D.P.R. March 28, 2018). Defendants, however, did not cite to the *Suárez-Torres* Opinion and Order. If this Court had not looked further when evaluating footnote 23 and noticed the origin of the footnote, Defendants would have gotten away with essentially passing that footnote as their own. As officers of this Court, counsel for Defendants should strictly adhere to citation requirements.

because Plaintiff alleged in the Original Complaint that he
first encountered the architectural barriers at the Restaurant
on November 11, 2018, but waited until November 22, 2019 to
file the Original Complaint, Defendants argue his suit is
untimely. Docket No. 127 at pgs. 16-18. But Defendants'
argument overlooks the type of violation that is being alleged
in this case.

Indeed, the record shows that Plaintiff filed his Original
Complaint on November 22, 2019. Docket No. 1. In the
Original Complaint he mentioned that he visited the
Restaurant on November 11, 2018, and that he was deterred
from returning on November 21, 2019 because he was aware
of certain barriers that prohibited his equal enjoyment of the
Restaurant. Docket No. 1 at pgs. 2-3. On August 4, 2020,
Plaintiff filed his Amended Complaint, which in turn became
the operative complaint in this case. Docket No. 41. There,
Plaintiff reiterated that he visited the Restaurant on
November 11, 2018 where he "encountered barriers (both
physical and intangible) that interfered with [his] ability to
use and enjoy the goods, services, privileges and
accommodations offered at the [Restaurant]." *Id.* at pg. 13. He

also stated that "on November 21, 2019, [he] was deterred of visiting the [Restaurant] because he is aware of illegal barriers to his access and he knows that it would be futile or dangerous to engage [those] barriers." *Id.* He also noted that "he visited the [Restaurant] on January 30, 2019 and encountered barriers (both physical and intangible) that interfered with [his] ability to use and enjoy the goods, services, privileges and accommodations offered at the [Restaurant]." *Id.* Lastly, he added that he also visited the Restaurant on January 30, 2020 and identified certain barriers in the reportedly accessible parking lot and restroom at the Restaurant. *Id.* at pgs. 11-12.[11]

The enforcement provision found in Title III of the ADA states, in pertinent part, that injunctive relief is available to "any person who is being subjected to discrimination on the basis of disability in violation of [Title III of the ADA]." 42 U.S.C. § 12188(a)(1). In *Pickern v. Holiday Quality Foods, Inc.,*

---

[11] Moreover, as the uncontested facts in this case reveal, Plaintiff visited the Restaurant on November 11, 2018 and January 30, 2019 and was deterred from returning due to his knowledge of the purported barriers that prohibited his enjoyment of the Restaurant because they were not in compliance with the ADA. *See* UF ¶ 7.

293 F.3d 1133, 1136 (9th Cir. 2002), the Ninth Circuit interpreted the "subjected to" language in the aforementioned provision to mean that "a continuing . . . violation of the ADA is an injury within the meaning of the Act." The plaintiff in *Pickern* was a disabled man who alleged that he was deterred from entering a grocery store because of certain architectural barriers that were present there. *Id.* at 1135-1136. The Ninth Circuit was tasked with reviewing a district court's grant of summary judgment which found, *inter alia,* that a plaintiff's suit was time-barred because he filed the same more than a year after first becoming aware of the architectural barriers.[12] *Id.*

The *Pickern* court reversed and remanded the district court's decision and in doing so held that "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137. And because the plaintiff in *Pickern* had stated that he was aware of the barriers and that they continued to deter him from entering the grocery store,

---

[12] In *Pickern,* the parties agreed that the applicable statute of limitations was one-year. *See Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002).

his suit was timely. *Id.* The *Pickern* court clarified that "[a] plaintiff has no cause of action under the ADA for an injury that occurred outside the limitations period," however he "has a cause of action, and is entitled to injunctive relief, for an injury that is occurring within the limitations period, as well as for threatened future injury." *Id.*

The *Pickern* rationale discussed above was followed by the Seventh Circuit in *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069 (7th Cir. 2013).  Although the procedural posture in *Scherr* was different than the one in *Pickern*, given that in *Scherr* the Seventh Circuit was reviewing a district court's grant of a motion for judgment on the pleadings, it adopted the *Pickern* rationale and held that because plaintiff had stated that the ADA violations were ongoing, plaintiff's claims were not time-barred. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075-1076 (7th Cir. 2013) (explaining that "[b]ecause the violations [plaintiff] alleges are continuing, the applicable statute of limitations does not bar her claim.").

The Court finds the *Pickern* rationale persuasive and adopts it here.[13] To that end, while the injuries that Plaintiff

---

[13] Although discussing the "existence of a private right of action," under

sustained prior to November 22, 2018 are time-barred, Plaintiff has in fact stated that the discriminatory conduct was still present during his January 30, 2019 and November 21, 2019 visits. And the injuries tied to those visits fall within the limitations period. Further, as shown at UF ¶¶ 7 and 13, Plaintiff has remained steadfast that the discriminatory conditions posed by the architectural barriers at the Restaurant are continuing and although he wishes to return to the Restaurant, the barriers deter him from doing so. *See* UF ¶¶ 7 and 13.[14] Accordingly, the Court finds that Plaintiff's suit is not time-barred.[15]

---

Title III of the ADA, in *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003), the First Circuit pointed out that "the existence of a private right of action under section 12188(a)(1) does not depend upon how many attempts a plaintiff has made to overcome a discriminatory barrier, but, rather, upon whether the barrier remains in place." The Court also finds that this acknowledgment by the First Circuit aligns with the rationale employed in *Pickern*. And though the *Dudley* court did not have before it a statute of limitations argument, it cited in approval to the sections in *Pickern* that pertained to the rationale articulated by that court regarding the statute of limitations argument. *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305-306 (1st Cir. 2003).

[14] Plaintiff also alleged the "ongoing" nature of his claims in the Original Complaint and the Amended Complaint. Docket Nos. 1 and 41.

[15] While the use of "continuing" in the Court's analysis may cause some confusion amongst its readers, the Court clarifies that those references

### b. Defendants' Contention that Plaintiff Violated the Anti-Ferret Rule

Defendants posit that Plaintiff contravened the anti-ferret rule because he only submitted one exhibit and the paragraph numbers of that exhibit do not match his PSMFs. Docket No. 130 at pgs. 3-5. This District's anti-ferret rule is Local Rule 56. The same states, in pertinent part, that a party that is moving for summary judgment must submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." D.P.R. CIV. R. 56(b). Local Rule 56(b) adds that, "[e]ach fact asserted in the statement shall be supported by a record citation as required by subsection (e) of this rule." *Id.* In turn, Local Rule 56(e) tells the Court, in pertinent part, that it "shall have no independent

---

should not be confused with the "continuous violations doctrine" mentioned by Defendants. That doctrine is different than the reasoning articulated in *Pickern.* The distinction was discussed at length in *Hamer v. City of Trinidad,* 924 F.3d 1093 (10th Cir. 2019). There, albeit discussing ADA Title II claims, the Tenth Circuit also found support in the *Pickern* rationale when it held that a plaintiff's claims that fell within the statute of limitations were not time-barred. *Id.* at 1103, 1107. In doing so, the *Hamer* court explicitly differentiated between the "continuing violations doctrine" and the "repeated violations doctrine." The latter and not the former, is at play in the instant case.

duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. Civ. R. 56(e).

Here, Plaintiff's PSMFs at Docket No. 128-1 are supported by record citations. While, for example the PSMF ¶ 2 does not say "Docket No. 128-3," it cites to paragraphs found in the document identified in the PSMF as the "Unsworn Declaration Under Penalty of Perjury of William Rodríguez Burgos," which is the document at Docket No. 128-3 that was attached to Plaintiff's motion for summary judgment. Admittedly, Defendants' argument was a bit hard to follow, but even considering the limited information provided by Defendants, the Court finds that Plaintiff did not violate the anti-ferret rule when it submitted its PSMF.

## IV. ANALYSIS

Section 12182(a) of Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation." 48 U.S.C. § 12182(a). This follows that to advance a *prima facie* ADA Title III claim in this scenario, Plaintiff must satisfy the following three elements: (1) show that he has a qualified disability under the ADA; (2) show that Defendants operate a place of public accommodation (as defined by the ADA); and (3) show that he was discriminated against because of his qualified disability. *See Medina-Rodríguez v. Fernández Bakery, Inc.*, 255 F. Supp. 3d 334, 341 (D.P.R. 2017). Here, the parties agree that Plaintiff qualifies as a disabled individual under the ADA and that Defendants operate a "public accommodation," to wit, the Restaurant. To that end, the parties are on the same page when it comes to the first and second elements. The parties, however, disagree on the third element: whether Plaintiff has been discriminated against because of his disability.

Title III of the ADA defines discrimination, in pertinent part, as the "failure to remove architectural barriers, and communication barriers that are structural in nature . . . where such removal is readily achievable." 48 U.S.C. § 12182(b)(2)(A)(iv). As generally discussed, Plaintiff claims that certain barriers (which will be discussed in further detail

below) remain present at the Restaurant which preclude his "full and equal enjoyment" of the Restaurant. Defendants, nevertheless, argue that the Restaurant is ADA compliant in view of recent alterations made in response to Plaintiff's claims. As such, Defendants reason that Plaintiff's claims are moot.

For the Court to evaluate whether Plaintiff's claims and the alterations purportedly made by Defendants are ADA compliant, the Court must determine the ADA standards that it shall use for purposes of this inquiry. According to ADA regulations, the applicable standard for new constructions and alterations[16] are as follows:

> (1) New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 [ADA] Standards if the date when the last

---

[16] The ADA Regulations define alterations as: "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402(b). Alterations are said to "include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." *Id*. However, "[n]ormal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alternations unless they affect the usability of the building or facility." *Id.*

application for a building permit or permit extension is certified to be complete by a State, county, or local government (or, in those jurisdictions where the government doe snot certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010.

(2) New Construction and alterations subject to §§ 36.401 or 36.401 shall comply either with the 1991 [ADA] Standards or with the 2010 [ADA] Standards of the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government (or, in those jurisdictions where the government does not certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is on or after September 15, 2010 and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010 and before March 15, 2012.

(3) New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010

> [ADA] Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government (or in those jurisdictions where the government does not certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012.

28 C.F.R. §§ 36.406(a)(1) – (a)(3).

While the parties do not provide a construction date for the Restaurant, it is undisputed that the Restaurant has been operating since 1993 and that certain areas were renovated in or around 2001. *See* UF ¶ 6. Moreover, the record shows that certain alterations were made in or around 2020 and 2021 in response to Plaintiff's claims. *See e.g.*, Docket No. 99 at pg. 3 (stating that "[b]ecause the [Restaurant] received an alteration sometime after August 14, 2020, applicability of the current 2010 ADA Standards is validated."). As noted, however, the construction date of the Restaurant remains unknown and it is also unknown if and when permits were issued for the

alterations. In view of this information and considering that the parties rely on the 2010 ADA Standards in their respective motions for summary judgment, the Court will assume, without deciding, that the 2010 ADA Standards apply.

With these precepts in mind, the Court will first consider Defendants' motion for summary judgment and then move on to Plaintiff's motion for summary judgment.

### a. Defendants' Motion for Summary Judgment - Mootness

Defendants aver that summary judgment is proper because the Restaurant has successfully undertaken the necessary steps to comply with Title III of the ADA. Docket No. 127. To that end, they contend Plaintiff's claims are moot. "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Another way of putting this is that a case is moot when the court cannot give any effectual relief to the potentially prevailing party." *Am. Civ. Liberties Union of Mass. v. U.S. Confs. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (internal quotation marks and citations omitted). The party that asserts mootness, has the "heavy burden" of showing that the claims are in fact moot. *Laufer v. Acheson Hotels, LLC,* 50 F.4th 259, 278

(1st Cir. 2022) (quoting *Bos. Bit. Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021)).   This follows that, because Defendants are asserting mootness, they bear the aforementioned "heavy burden." The Court will therefore examine the outstanding "Corrections," in turn.[17]

### 1.   Correction 1 – Advertising Columns Blocking Sidewalks

Correction 1 pertains to whether there is at least one accessible route within the site from the pedestrian sidewalk to the Restaurant. *See* Docket No. 119 at pg. 5. Correction 1 is therefore tied to Plaintiff's claim that the "[t]here is no accessible route from the street and sidewalk to the entrance accessible to persons with disabilities." Docket No. 41 at pg. 15 ¶ f. Defendants address Correction 1 by relying on the Solís Report. According to the Solís Report, which predates the Hernández-Cabán Report (and logically also predates the Hernández-Cabán Compliance Report), "[t]here are continuous sidewalks that connect the public sidewalk along the front of the restaurant to the main entrance and to another

---

[17] To be clear, the outstanding "Corrections" pertain to the corrections that Ms. Hernández-Cabán noted in the Hernández-Cabán Compliance Report, remained outstanding.

entrance located on the east side of the restaurant. Therefore, there is at least one accessible route from the public sidewalk to the restaurant, in compliance with Section 206.2.1[.]" Docket No. 64-2 at pg. 6 ¶ i and Docket No. 127-2 at pg. 6 ¶ i. Defendants also bank on the Hurtado-Arroyo Statement, wherein Mr. Hurtado-Arroyo represents that "an exclusive independent entrance from the sidewalk has been identified with 2 ADA Accessible signs." Docket No. 127-2 at pgs. 30-31 ¶ 2.

For his part, Plaintiff counters by referencing the Hernández-Cabán Compliance Report and Mr. Gabriel Santana-Concepción's statement subject to penalty of perjury (the "Santana-Concepción Statement"). According to the Hernández-Cabán Compliance Report, Defendants have not demolished the advertising columns that are on the sidewalk. Docket No. 119 at pg. 5. This reasoning follows that, as long as the advertising columns remain in place, the walking surface that is part of the accessible route from the sidewalk to the Restaurant will not satisfy the requirement that it be at least 36 inches wide. *Id.* Further, pursuant to the Santana-Concepción Statement, Mr. Santana-Concepción visited the

Restaurant on July 20, 2022. Docket No. 141-2 at ¶ 3. During that visit, he noticed that the advertising columns had not been demolished and he did not observe an alternate accessible entrance. *Id.*[18]

Section 206.2.1 of the ADA Accessibility Guidelines ("ADAAG") states that "[a]t least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks . . . to the accessible building or facility entrance they serve." ADAAG § 206.2.1. Moreover, if a walking surface is part of an accessible route, it must, *inter alia,* have a clear width of at least 36 inches. ADAAG §§ 403.1 and 403.5.1. In this case, the Solís Report does not indicate which are the "alternate accessible routes" from the public sidewalk to the Restaurant. And even though the Hurtado-Arroyo Statement included a photograph[19]  showing an "accessible" sign, the

---

[18] The Court notes that the accessible sign that the Hurtado-Arroyo Statement represented was in place, is not visible in the picture attached to the Santana-Concepcion Statement.

[19] The Court notes that the photographs referenced as "Exhibit 1" at Docket No. 127-2 at pgs. 30-31 ¶ 2 were not attached to Docket No. 127-2, even though Defendants submitted a copy of the Hurtado-Arroyo Statement that was previously submitted at Docket No. 111. Because of this, the Court was able to find what was identified as Exhibit 1 at Docket

same does not actually show that the purported accessible route leads towards the entrance of the Restaurant. More fundamentally, neither the Solís Report nor the Hurtado-Arroyo Statement (and the accompanying photograph at Docket No. 111-2) constitute evidence that would allow the Court to ascertain that, even if there were alternate accessible routes, the same comply with the minimum 36 inches in width requirement or that they fall under the exceptions listed at ADAAG §§ 403.5.2 and 403.5.3. Therefore, Plaintiff's reliance on the Hernández-Cabán and the Santana-Concepción Statement are enough at this juncture to show that an issue of material fact remains as far as Correction 1 is concerned. To that end, the Court does not find that this matter is moot and summary judgment is not proper as to this issue at this time.

### 2. Correction 2 – Forcing Close of Doors

Correction 2 pertains to whether the force of the bathroom door is ADA compliant. *See* Docket No. 119 (Hernández-

---

No. 127-2 at pgs. 30-31 ¶ 2 at Docket No. 111-2. The Court is aware that putting together motions for summary judgment can be quite cumbersome. But in the future, Defendants should be more mindful when submitting their pleadings and documents to the Court.

Cabán Compliance Report noting that "[f]orce to open bathroom door is still above the 5 lbs. maximum, not complying."). This correction is therefore tied to Plaintiff's claim that the restroom is not accessible. Docket No. 41 at pg. 28 ¶ f. Defendants do not address this specific issue. Instead, they mention that the men's restroom was designated as a unisex accessible restroom and the force of the door closers at the entrances of the Restaurant. Docket No. 127 at pgs. 11-12. Nevertheless, that does not address the matter regarding the "force" of the bathroom door. For his part, Plaintiff counters by referencing the Santana-Concepción Statement. According to Mr. Santana-Concepción, during his visit to the Restaurant on July 20, 2022, he felt that the bathroom door was between 6 lbs. and 6.5 lbs. Docket No. 141-2 at ¶ 4. Section 309.4 of the ADAAG states that "[o]perable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds (22.2 N) maximum." ADAAG § 309.4. Because the Defendants have not advanced any evidence to show that no issue of material fact remains as to Correction 2 and the force of the bathroom door, the Court finds that this

point is not moot and summary judgment is not proper at this time.

### 3.Correction 4 – The Bathroom

Correction 4 pertains to whether the men's bathroom at the Restaurant is ADA compliant. Correction 4 is therefore tied to Plaintiff's claims regarding the men's restroom at the Restaurant. Docket No. 41 at pg. 18 ¶¶ b – g. Defendants rely on the Hurtado-Arroyo Statement, which, while undated, appears to have been prepared at some point after the Hernández-Cabán Report, given that it acknowledges the Court's directives to implement the corrections outlined in that report. *See* Docket No. 127-2 at pg. 29 ¶ A. Per the Hurtado-Arroyo Statement, the bathroom was "redesigned and reconfigured, meeting with all ADA Chapter 6 plumbing elements and facilities standards, as recommended on page 14 of the Report." Docket No. 127-2 at pg. 31 ¶ 5. The Hurtado-Arroyo Statement is accompanied by photos of a urinal with a measuring tape appearing to show that the urinal is approximately 15 inches above the finish floor. Docket No. 111 – 4 and 111 – 5.[20]

---

[20] Just as described at *supra* note 19, the Court notes that the photographs

Plaintiff counters with the Hernández-Cabán Compliance
Report which recognizes that while certain adjustments were
made, some of those adjustments introduced new ADA
violations. Docket No. 119 at pgs. 8-10. Plaintiff also relies on
the Santana-Concepción Statement, wherein Mr. Santana-
Concepción includes pictures with a measuring tape showing
that the outstanding corrections that needed to be made, as
pointed out in the Hernández-Cabán Compliance Report, had
not been made. Docket No. 141-2 at pgs. 3-7 at ¶ 6.

Here, the record shows that there are material issues of
fact regarding this point and so the Court does not find that
the matter is moot at this time.

### 4. Correction 5 – Parking Space

Correction 5 pertains to the parking space at the
Restaurant. Correction 5 is therefore tied to Plaintiff's claims
regarding the accessibility of the parking area at the
Restaurant. Docket No. 41 at pgs. 14-15. Plaintiff has admitted
that Defendants took corrective actions regarding certain

---

referenced as "Exhibit 2" at Docket No. 127-2 at pg. 31 ¶ 5 were not
attached to Docket No. 127-2. The Court, however, was able to find what
was identified as Exhibit 2 at Docket No. 127-2 at pg. 31 ¶ 5 at Docket No.
111-4 and 111-5.

signs in the parking area. *See* DSMF ¶ 29 and ¶ 31 vis-à-vis PLAINTIFF'S RESPONSE SMF at ¶¶ 29 and 31. As such, those claims are **MOOT**. Nevertheless, Defendants also argue that Plaintiff's claims regarding the accessibility of the parking area are moot and that the corrective measures undertaken after the Hernández-Cabán Report have made the area ADA compliant. Docket No. 127 at pgs. 13-15. According to the Hurtado-Arroyo Statement "the parking space was redesigned and reconfigured in accordance with ADA 2010 Chapter 5, as recommended in pages 12-13 of the Report." Docket No. 127-2 at pg. 31 ¶ 6. Plaintiff counters with the Hernández-Cabán Compliance Report which points to the corrections that remain outstanding in the accessible parking area. Docket No. 119 at pgs. 11-13.

Here, the Court finds that the Hurtado-Arroyo Statement entails a blanket assertion that the parking space is now ADA compliant. And while the Hurtado-Arroyo Statement includes a picture[21] of what appears to be the accessible

---

[21] Just as in *supra* notes 19-20, the Court notes that the photographs referenced as "Exhibit 3" at Docket No. 127-2 at pg. 31 ¶ 6 were not attached to Docket No. 127-2. The Court, however, was able to find what was identified as Exhibit 3 at Docket No. 127-2 at pg. 31 ¶ 6 at Docket No.

parking area at the Restaurant, the Court is unable to ascertain whether the demarcations and the current set up of the parking space are ADA compliant.  Accordingly, while the Court has found that the alterations discussed at DSMF ¶ 29 and ¶ 31 vis-à-vis PLAINTIFF'S RESPONSE SMF at ¶¶ 29 and 31 are **MOOT**, there are still outstanding corrections when it comes to the Parking Space and so the Court is precluded from holding that there are no material issues of fact regarding all of Plaintiff's parking space related claims and determining that they are all moot.

### 5. Corrections 6 and 7 – The Play Area

Corrections 6 and 7 pertain to certain barriers identified in the play area in the Restaurant. According to the Hurtado-Arroyo Statement, the play area is closed due to the COVID-19 restrictions. Docket No. 127-2 at pgs. 31-32 ¶ 7. The Court therefore finds that this matter is **MOOT**.

### b. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – READILY ACHIEVABLE

Defendants argue that Plaintiff failed to prove his "case" at the summary judgment stage in view of the standard

---

111-3.

outlined by the Tenth Circuit in *Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship.*, 264 F.3d 999, 1005-1006 (10th Cir. 2001) and so summary judgment should be entered in their favor. Docket No. 127 at pg. 19-27. Defendants specify that Plaintiff has not produced evidence to show that the removal of the architectural barriers at the Restaurant is readily achievable. *Id.* Further, Defendants claim that because they have had to hire an expert and pay for the Court appointed expert, they have already spent $11,565.80. *Id.* at pg. 27.[22]

The First Circuit has yet to state if it will adopt the burden shifting framework espoused in *Colorado Cross,* let alone the burden that plaintiff has at the summary judgment stage.[23] In *Colorado Cross,* the Tenth Circuit set forth a two-step burden shifting framework whereby the plaintiff is first tasked with presenting "evidence tending to show that the suggested

---

[22] The record confirms, as Defendants do note, that they paid $1,475.00 to Ms. Hernández-Cabán's Court appointed expert duties. Docket Nos. 122 and 122-1. But Defendants to not provide any evidence as to the other expenses, resulting in the $11,565.80 allegedly spent.

[23] Section 12181(9) defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

method of barrier removal is readily achievable under the particular circumstances." *Colorado Cross,* 264 F.3d at 1002. If plaintiff satisfies this initial burden, the burden then shifts to the defendant who is tasked with the "ultimate burden of persuasion that barrier removal is not readily achievable." *Id.* at 1002-1003. This framework was adopted by the Eighth and Eleventh Circuits. *See Wright v. RL Liquor,* 887 F.3d 361, 364 (8th Cir. 2018); *Gathright-Dietrich v. Atlanta Landmarks, Inc.,* 452 F.3d 1269, 1274 (11th Cir. 2006).

For its part, while the Second Circuit also adopted a burden shifting framework, but the initial burden placed on the plaintiff was lessened a bit such that the plaintiff first needed to "articulate a *plausible proposal* for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits.'" *Roberts v. Royal Atl. Corp.,* 542 F.3d 363, 373 (2d Cir. 2008) (quoting *Borkowski v. Valley Central School District,* 63 F.3d 131, 138 (2d Cir. 1995)). Once the plaintiff did so, "the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits." *Id.* The Ninth Circuit has also adopted the Second Circuit's

framework since it understood that it was the "most sensible because otherwise we would be asking too much of plaintiffs, especially considering that defendants have more knowledge and information regarding their own facilities, which allows them to quickly and easily counter implausible barrier-removal proposals." *López v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020).

These frameworks were recently discussed in detail by a sister court in *Betancourt-Colón v. Arcos Dorados Puerto Rico, LLC,* Civ. No. 21-1311, 2023 WL 171123 (D.P.R. Jan. 12, 2023). The *Betancourt-Colón* court was also faced with a similar fact pattern as the one currently before this Court. The plaintiff in *Betancourt-Colón* filed a Title III ADA suit after he visited a McDonald's restaurant in Luquillo. *Id.* at *1-2. He claimed that he was discriminated against because of several architectural barriers that precluded his full enjoyment of the establishment. *Id.* The parties filed cross-motions for summary judgment, and the defendant, relying on *Colorado Cross,* also argued that the plaintiff had failed to show that the alterations were readily achievable. *Id.* at *7-9.

As part of its analysis, the *Betancourt-Colón* court considered the standard set forth in *Colorado Cross* and how it was applied by other district courts that fall under the First Circuit's umbrella. *Id.* In doing so, it denied defendant's motion for summary judgment which was predicated on the *Colorado Cross* framework because it found that the plaintiff could "still present designs and cost estimates at trial," regarding the architectural barriers and the plaintiff had advanced sufficient evidence (an expert report stating the ADA violations and the proposed alterations) to preclude the entry of summary judgment in defendant's favor. *Id.* at *9-10. Like the plaintiff in the *Betancourt-Colón* case, the Plaintiff in the instant case has relied on the Hernández-Cabán Report and Compliance Report to show the ADA violations at the Restaurant and the recommended alterations. Admittedly, Plaintiff has reaped the benefits of the Hernández-Cabán Report and Compliance Report, which, for the most part, align with his claims, and he has not had to incur in any costs for those reports. But just as with the plaintiff in the *Betancourt-Colón* case, here, Plaintiff's reliance on the reports is enough for his claims to live another day and for this Court

to **DENY** Defendants' motion for summary judgment.

### c. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for the entry of summary judgment based on his understanding that he has successfully shown that he satisfied all the necessary elements to advance his claims. But while the evidence marshaled by Plaintiff in response to Defendants' motion for summary judgment was just enough for his claims to move forward at this juncture, it is not enough for the Court to enter summary judgment in his favor. Plaintiff has not provided an estimate as to how much the proposed alterations would cost and so a determination as to whether the same are "readily achievable" cannot be made at this time. *See, e.g., Roberts*, 542 F.3d at 372 (explaining that plaintiff's "burden may be met with cost estimates that are facially plausible, without reference to design details, and are such that the defendant can assess its feasibility and cost."). Therefore, his request for summary judgment is **DENIED**.

## V. CONCLUSION

In light of the above, Defendants' motion for summary judgment at Docket No. 127 is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's motion for summary judgment at Docket No. 128 is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of March 2023.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE